## MOORE et al. v. LEE TIRE & RUBBER CO. OF NEW YORK, Inc.

(Circuit Court of Appeals, Eighth Circuit. May 3, 1921.)

No. 5722.

1. **Appeal and error �köö997(3)—Directed verdict reviewable only for lack of supporting evidence.**

   Where both parties moved for directed verdict, the verdict directed will be sustained, if supported by any substantial evidence.

2. **Trial �köö386(4)—Requested declaration of law, bad in part, properly refused.**

   A requested declaration of law, in an action submitted on request by both parties for direction of a verdict, *held* properly refused, where it was in part based on findings to be made and also contained a declaration clearly erroneous under the issues.

3. **Contracts �köö71(2)—Extension of time good consideration for indorsement.**

   The personal indorsement by the manager of a business, who also owned an interest therein, of trade acceptances given for merchandise, was based on a good consideration, where, by such indorsement, he obtained an extension of the time of payment of the debt, as the trade acceptances would not have been accepted, except for his indorsement.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action at law by the Lee Tire & Rubber Company of New York, Incorporated, against L. C. Moore and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Barnard J. Stewart, of Salt Lake City, Utah (Daniel Alexander and D. A. Skeen, both of Salt Lake City, Utah, on the brief), for plaintiffs in error.

Mahlon E. Wilson, of Salt Lake City, Utah (Hiram E. Booth, E. O. Lee, Carl A. Badger, and Benjamin L. Rich, all of Salt Lake City, Utah, on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and LEWIS and COTTERAL, District Judges.

---

⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CARLAND, Circuit Judge. The parties will be referred to as in the trial court. The plaintiff brought this action against defendants to recover a balance of $5,120, claimed to be due and owing from them as copartners under the firm name and style of L. C. Moore Company for goods, wares, and merchandise sold to them as such copartners. At the trial both parties at the close of all the evidence moved for a directed verdict. The defendants also requested what is called a declaration of law. The court directed a verdict for the plaintiff and refused the so-called declaration of law. Defendants have brought the case here, assigning as error the granting of the motion of plaintiff for a directed verdict, the refusal to direct a verdict for defendants, and the refusal to declare the law as requested.

It will not be necessary to consider whether the court erred in refusing to direct a verdict for defendants as the consideration of the assignment that the court erred in directing a verdict for the plaintiff necessarily determines the former, and we have no authority to direct the entry of judgment. Slocum v. N. Y. Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

[1] Coming to the alleged error in the direction of a verdict for the plaintiff, the only question to be considered is as to whether there is any substantial evidence to support the verdict. La Crosse Plow Co. v. Pagenstecher, 253 Fed. 46, 165 C. C. A. 644, and cases cited. Upon this proposition the record shows that defendants do not dispute the correctness of the amount of the verdict. Their defense is that the defendants were not liable for the debt as copartners, but that the debt is due and owing by the U. Built Tire Company, a corporation of Utah, doing business under the trade-name of L. C. Moore Company. The contested issue, therefore, at the trial, was as to whether the corporation mentioned was liable for the debts, or the individual defendants. Both parties by their motions for a directed verdict agreed that the court should determine this issue. We are not concerned as to whether the court made a correct finding of the facts upon this issue, but are simply to determine whether there was substantial evidence to support the finding made. There was evidence tending to show that in February, 1918, George H. Wright, agent of the plaintiff, visited Salt Lake City, Utah, for the purpose of establishing a distributor for the sale of automobile tires manufactured by it. On this visit he met L. C. Moore and Daniel Alexander, the former at the place of business of L. C. Moore Company, 443 South Main street. He saw the sign "L. C. Moore Co." on the door at the number aforesaid, talked with Moore, who expressed a wish to become distributor for plaintiff's tires, and said he would have to talk with his partners, although he was authorized to act for them. Before giving the matter serious consideration, Moore wanted Mr. Wright to meet Daniel Alexander.

Wright met Alexander at the Hotel Utah, and talked over terms, prices of tires, discounts, and territory. At the end of the conversation, Alexander told Wright to make up an order not exceeding $5,000, and that to insure prompt payment, and show the reliability of the company, Alexander and the other members of the company would sign the order.

Alexander said that Moore, Terzopoulos, and Jacobson, were partners. The order was made out and signed by L. C. Moore Company, L. C. Moore, Daniel Alexander, William Terzopoulos, and S. Jacobson. An agreement in writing, dated February 20, 1918, was entered into between the plaintiff and L. C. Moore Company, whereby the L. C. Moore Company was constituted a distributor for the plaintiff, and the terms and conditions which were to govern the parties in reference to the sale of plaintiff's tires were fixed. In July, 1918, Wright saw Moore again at the place above stated, and told him that the account with the plaintiff was behind, and that payment must be made. Moore said that collections were bad, and that later he would take care of the account. Wright suggested that trade acceptances, to be signed by all four members of the firm, be made out, and he (Wright) would send them to the plaintiff and recommend their acceptance, with dates conformable to their ability to pay. Moore said that he could do nothing until he consulted Alexander. Wright saw Alexander, who told him that trade acceptances would be all right, but that he (Alexander) could not get all four signatures, as Jacobson was in the hospital, but to send the acceptances to the plaintiff, signed by the L. C. Moore Company, by L. C. Moore, Manager, and plaintiff could make out new acceptances and send the same to him (Alexander), and he would have the other members sign them; that he considered Jacobson, Terzopoulos, Moore, and himself responsible for the debt.

Pursuant to this conversation, the trade acceptances were made out on which this suit is brought. They were accepted by L. C. Moore Company, by L. C. Moore, Manager. In September, 1918, Wright was again in Salt Lake City, saw Moore, and told him plaintiff was not satisfied with the account; that plaintiff required indorsements of the acceptances. Later Wright went with Moore to Alexander's office. Alexander said that, owing to Jacobson's continued illness, all the signatures could not be obtained, and that he (Alexander) did not want to sign without the others. After leaving Alexander's office, Moore indorsed the acceptances individually. Terzopoulos, called by plaintiff, testified that he was a member of the L. C. Moore Company, associated with Alexander, Moore, and Jacobson; that they were all acting together. Moore testified that Terzopoulos, Jacobson, Alexander, and himself met at Alexander's office and discussed the idea of going into a deal with plaintiff. This was prior to the making of the first order above mentioned. The evidence thus detailed, standing alone, would support the verdict beyond question, as the trial court had the right to draw the same inferences from the facts proven as a jury would.

On the part of the defendants, evidence was introduced tending to show that on July 11, 1916, a corporation under the name of New Process Double Tread Tire Company, with a capital stock of $5,000, was incorporated under the laws of the state of Utah. The capital stock was divided into 5,000 shares, of $1 per share, of which stock the defendant S. Jacobson owned 1,000 shares, Daniel Alexander 550

shares, William Terzopoulos 500 shares, N. Offer 500 shares, and L. Strike 450 shares. Subsequently the articles of this corporation were amended by increasing the capital stock to $25,000, and changing the name of the corporation to U. Built Tire Company. Shortly after these amendments and change of name, L. C. Moore purchased 50 per cent. of the capital stock of the U. Built Tire Company, and at the time that the indebtedness to the plaintiff was incurred the stock of the U. Built Tire Company was owned as follows: L. C. Moore, 50 per cent.; S. Jacobson, 25 per cent.; Daniel Alexander, 9 per cent.; William Terzopoulos, 9 per cent.; and L. Strike, 7 per cent. There was oral testimony that in December, 1917, the stockholders of the U. Built Tire Company met and resolved to amend the articles of incorporation by changing the corporate name to L. C. Moore Company; that the proper papers were made out for this purpose and delivered to Moore, but in some way they became lost, and were never filed as required by law with the county clerk or the secretary of state. So that for all practical purposes the attempt to change the name of the corporation amounted to nothing.

It is claimed, however, that the defendants, in whatever business was transacted with the plaintiff, were acting as directors or managing agents of the U. Built Tire Company, and that the indebtedness to recover for which the present suit was brought, is due and owing by that corporation, and not by the defendants individually. This is not a case alone where persons have in good faith acted as a corporation, or in the name of a corporation, which for some reason was not legally organized, or the name was not legally changed; but there is additional evidence that they acted as individuals associated together, regardless of incorporation. It is not claimed that the L. C. Moore Company was ever incorporated, and it is, to say the least, somewhat unusual for a corporation to have a trade-name. We have no doubt but that there was evidence which clearly supported the verdict, and that is as far as we need go on this proposition.

[2] At the conclusion of the evidence, in addition to the request for a directed verdict, the defendants requested the court to give the following declaration of law:

"The rule that a corporation has but one legal name, and that that name is the name formally conferred upon it by the state, does not mean that a corporation can never act under a different name. While it may be desirable that a corporation act only by its legal name, still a corporation may, in good faith, do business under a name other than its legal name, and may assume a name for the purpose of its business. If, in good faith, a contract is executed by a corporation under an assumed name, or if a corporation does business under an assumed name, the corporation is just as much bound as if it had used its legal name, and a contract entered into by or with a corporation, in good faith, under an assumed name, by the respective parties to the contract, and without fraud, may be enforced by either party, if the identity of the corporation acting under the assumed name is established by the proof, and if you find from the evidence that the U. Built Tire Company was a corporation of the state of Utah, and that this corporation was acting and doing business under the name of L. C. Moore Company, and that the account sued upon was an account with the U. Built Tire Company, doing business under the name of L. C. Moore Company, then you are instructed to bring in a verdict for the defendants and each of them of no cause of action."

(273 F.)

The court refused to give this so-called declaration of law, and we think rightly, first, because the so-called declaration of law is both a declaration of law in its first part and a charge to the jury commencing with the words "and if you find." The trial court was not obliged to pick out from the matter requested what was law and what was a charge to the jury on the facts.

[3] Again, L. C. Moore was beyond question liable individually for the debt, and, considering the last part of the request as a charge to the jury, it could not have been given, for the reason that the plaintiff was entitled to a verdict against Moore in any event. Moore claims that he indorsed the acceptances individually without consideration, but there is no evidence in the record that that claim is true. It does appear that he was the general manager of the association or corporation, whatever may be the fact, and as a stockholder he obtained an extension of the time of payment of the debt by his indorsement, as the trade acceptances would not have been accepted, except for his indorsement. International Harvester Co. v. Patterson, 257 Fed. 411, 168 C. C. A. 451.

The judgment is affirmed.